DOMENICO BRUZZI *et al. vs.* BOARD OF APPEALS OF

THE CITY OF PAWTUCKET.

MAY 18, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ROBERTS, J. This petition for certiorari was brought by certain remonstrants to have this court review a decision of the board of appeals of the city of Pawtucket granting an application for an exception to the zoning ordinance to permit the extension of a braid factory and the nonconforming use carried on therein into a more restricted district immediately adjacent thereto. Pursuant to the writ the pertinent records have been certified to this court by the respondent, hereinafter called the board.

An examination thereof shows that Israel Miller is the owner of a parcel of land located at the corner of South Bend and Johnson streets. This parcel consists of lots numbered 112, 115, 116 and 287 on assessors' plat No. 24. Miller acquired title to lots 112, 115 and 116 in 1922, some years prior to the adoption of a zoning ordinance on February

22, 1928. In 1933, about five years after such ordinance had been adopted, he purchased lot 287. All of these lots are within an area zoned as residence C.

At the time of the adoption of the zoning ordinance a partnership, I. Miller & Sons, was operating the braid factory in a building that covered all of lot 116 and a small portion of lot 115. I. Miller & Sons will hereinafter be referred to as the applicant. This industrial activity was permitted to continue as a nonconforming use under the terms of the zoning ordinance. In 1936 the then zoning board of review, in the absence of objection, permitted an extension of the building housing the braid factory into small portions of lots 115 and 287.

On August 5, 1955, under the provisions of subsections (3) and (4) of section 16, chapter 312, of the zoning ordinance, the applicant requested the board to grant an exception permitting it to extend the present building and the nonconforming use carried on therein into further portions of lots 115 and 287. The proposed addition would be a one-story cinder block building with a brick front. At the hearing thereon the remonstrants conceded that at the time of the adoption of the zoning ordinance the nonconforming use had been conducted on a small portion of lot 115 as well as on lot 116, and that the board had acted within its authority under the provisions of sec. 16 (3) in granting an exception for an extension of the nonconforming use further into lot 115. However, there remains in dispute the validity of the board's action in granting an exception to extend the building and use into lot 287 under the provisions of sec. 16 (4).

A hearing on the application was held September 6, 1955 at which conflicting evidence was adduced by the parties. The applicant introduced testimony to the effect that the building of the addition would not increase traffic congestion or hazards; that truck deliveries to the mill would be reduced from a weekly to a monthly schedule; that the

volume of night work would be reduced; that the principal remonstrant attempted to force the applicant to purchase his property at a price substantially above its market value; that in the past realtors have recommended that applicant's lots be rezoned for industrial use; that such lots are not suitable for residential use; that the only noise emanating from the mill is a low hum, audible for a short distance only; and that many people living close to the mill have resided there for long periods without complaining about the noise.

The remonstrants introduced testimony to show that traffic is congested at the present mill; that the erection of the proposed addition will increase the traffic congestion at the site; that the operation of the mill is noisy; that the use of additional machines in the proposed addition will increase the noise; that the noise has kept residents in the neighborhood from sleeping; and that people have moved out of the neighborhood because of such noise.

The board took the matter under advisement, viewed the premises, and found in substance that the erection of the proposed addition would serve to reduce traffic congestion on South Bend street; that no appreciable increase in noise emanating from the mill would result therefrom; and that such addition would not depreciate property values in the neighborhood. The board then granted the application for an exception subject to two restrictions, namely, that no windows be located on the South Bend street side of the proposed addition and that the finishing department be located therein.

The remonstrants contend that the board acted in excess of the authority conferred upon it by chap. 312, sec. 16 (4) of the zoning ordinance. That section reads as follows: "Approve the extension of a use or building into a more restricted district immediately adjacent thereto." In our judgment this section clearly confers authority on the board to extend a use or building into a more restricted district

immediately adjacent to the land upon which the building is located or the use carried on. The remonstrants contend, however, that sec. 16 (4) must be read in the light of the provisions of sec. 16 (2) which deal with the location of industrial B uses in industrial A districts. Section 16 (2) reads as follows: "Approve the location of a use permitted in an Industrial B District on any lot in an Industrial A District that is adjacent to a railroad or river, or adjacent to a non-conforming use; provided that no part of such use shall be located within two hundred feet of any residence district."

The remonstrants support their position by urging that an industrial B use cannot be located within 200 feet of any residential district and that this limitation applies to sec. 16 (4). They assert that the braid mill is an industrial B use and that their residential properties are admittedly within 200 feet of the proposed addition to the mill. In other words, they contend that the proviso contained in sec. 16 (2), which excepts lots within 200 feet of any residential area from the authority therein conferred upon the board, applies with equal force to sec. 16 (4).

We deem it unnecessary to pass upon the question whether applicant's braid mill constitutes an industrial B use. In our opinion, assuming it to be such a use, the board has authority under sec. 16 (4) to extend it to land immediately adjacent to its present situs, even though that land be classed as residential. It is well established with respect to provisos that, in the absence of a clearly disclosed legislative intent to the contrary, the operation thereof is usually confined to that section or portion of the statute which immediately precedes it or to which the proviso pertains, and does not extend to or qualify other sections or portions of the statute. 82 C.J.S., Statutes, §381 b (2), p. 887. *Richard T. Green Co.* v. *City of Chelsea,* 149 F.2d 927.

Nothing contained in sec. 16 is indicative of a clear legislative intent to make the proviso set out in sec. 16 (2)

applicable to the provisions of sec. 16 (4). On the contrary, a reading of sec. 16 is persuasive that the city council intended to confer upon the board a wider and more comprehensive authority under the provisions of subsec. (4) than it did under the provisions of subsec. (2). Section 16 (4) provides that any building or use may be extended into a more restricted district immediately adjacent to the land on which the building or use is located. The authority conferred is limited expressly only by the words "immediately adjacent thereto." We do not think that the board exceeded this authority in granting the exception under consideration.

The remonstrants contend further that in the instant case the board has, under the guise of granting an exception, in effect amended the zoning ordinance, which is a matter solely within the authority of the city council under §2 of the enabling act, general laws 1938, chap. 342. In support of their contention they cite *Paterson* v. *Zoning Board of Review*, 80 R. I. 494. In that case, at page 497, this court stated: "The action of the board here is not so much to approve limited extension of an existing nonconforming use as it is to permit several lots zoned for residential purposes to be used for the establishment virtually of a new business including a parking area that is now nonexistent."

We do not perceive that the board in the case at bar has in effect permitted the establishment of a new business. The existing building here measures 70 by 100 feet, contains 7,000 square feet of floor space, and covers all of lot 116 and small portions of lots 115 and 287. The proposed addition will measure 40 by 100 feet, contain 4,000 square feet of floor space, and cover additional portions, but not all, of lots 115 and 287. The use will remain unchanged and the floor space devoted to such use would be increased by approximately one third. If the addition were built there would be no structure on lot 112 and none on substantial portions of lots 115 and 287. The proposed addition would

be 75 feet away from the nearest property on Johnson street and 50 feet away from a garage on the remonstrant Conlon's property. We cannot agree that in the circumstances the rule of the *Paterson* case is controlling.

The remonstrants also contend that the decision of the board is not supported by legal evidence. In this respect we have consistently followed the rule that on certiorari the decision of a zoning board will not be disturbed unless it is not supported by legal evidence and is arbitrary. *Dunham* v. *Zoning Board,* 68 R. I. 88. We have examined the evidence to determine whether there was any legal evidence to support the decision of the board. We have noted that the board viewed the premises; that there was conflicting evidence concerning traffic congestion at the mill location and as to the emanation of noise from the mill; and that there was also evidence that the erection of the proposed addition would not depreciate property values in the neighborhood. In such circumstances we cannot say that the decision of the board was not supported by legal evidence and that it was wholly arbitrary and unreasonable.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified pursuant thereto are ordered returned to the respondent board.

*Quinn & Quinn, Joseph R. Weisberger,* for petitioners.

*John A. O'Neill,* City Solicitor, *Harvey J. Ryan,* Ass't City Solicitor, *Martin M. Zucker,* for respondent.